**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

COMMODITY FUTURES TRADING
COMMISSION,

               Plaintiff,

        v.

MICHAEL ACKERMAN, Q3 HOLDINGS,
LLC, and Q3 I, LP,

               Defendants.

Case No. 1:20-cv-01183-NRB

---

### [PROPOSED] FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS MICHAEL ACKERMAN, <u>Q3 HOLDINGS, LLC and Q3 I, LP</u>

On February 11, 2020, Plaintiff Commodity Futures Trading Commission ("Commission" or "Plaintiff") filed a Complaint ("Compl.") charging Defendants Michael Ackerman ("Ackerman"), Q3 Holdings, LLC ("Q3H") and Q3 I, LP ("Q3I") (collectively the "Defendants") with violating Section 6(c)(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 9(1) (2018), and Commission Regulation ("Regulation") 180.1(a), 17 C.F.R. § 180.1(a) (2020). ECF No. 1.

Ackerman was personally served with the Summons and Complaint on February 25, 2020.  ECF No. 21. Ackerman failed to appear or answer the Complaint, and the Clerk of Court, pursuant to Federal Rule of Civil Procedure 55(a), entered Ackerman's default on July 22, 2020. ECF No. 33. Likewise, Q3H and Q3I were personally served with the Summons and Complaint through their registered agent on February 28, 2020.  ECF Nos. 22, 23. Q3H and Q3I also failed to appear or answer the Complaint and the Clerk of Court similarly entered their defaults on July 22, 2020. ECF Nos. 36, 37.

The Commission has moved this Court to grant final judgment by default against Defendants, order permanent injunctive relief, and impose a restitution obligation and a civil monetary penalty.  The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its Motion, other written submissions filed with the Court, and the record in this case, and being fully advised in the premises, it is hereby:

**ORDERED** that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendants Michael Ackerman, Q3 Holdings, LLC and Q3 I, LP is **GRANTED**.

Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

## I.      SUMMARY OF FACTS

### A.      The Parties

1.      Plaintiff **Commodity Futures Trading Commission** is an independent regulatory agency that is charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2018), and Regulations promulgated thereunder, 17 C.F.R. pts. 1.1-190.10 (2020).  Compl. ¶ 11.

2.      Defendant **Q3 Holdings, LLC** is a limited liability company formed in Delaware on April 10, 2018.  Q3H's last known address is 1994 Carolina Circle NE, St. Petersburg, Florida.  Q3H has never been registered with the Commission. Compl. ¶ 12.

3.      Defendant **Q3 I, LP** is a limited partnership formed in Delaware on July 27, 2018. Q3I's last known address is1994 Carolina Circle NE, St. Petersburg, Florida.  Q3I has never been registered with the Commission. Compl. ¶ 13.

4.      Defendant **Michael Ackerman** is a resident of Alliance, Ohio.  Ackerman was primarily responsible for the trading at Q3.  Ackerman has never been registered with the Commission. Compl. ¶ 14.

**B.      Defendants' Fraudulent Scheme in Violation of Section 6(c) of the Act and Regulation 180.1(a).**

5.      From at least August 2017 through December 2019 (the "Relevant Period") Ackerman and the entities he founded, Q3H and Q3I, operated a fraudulent scheme in which they solicited and misappropriated funds to purportedly trade virtual currencies.  Compl. ¶¶ 1, 41

6.      Defendants fraudulently induced customers to deposit funds into the personal account of a Q3 founder, or Q3's bank account, for the purpose of converting those funds to cryptocurrency and then purportedly traded by Ackerman. Compl. ¶ 19.

7.      Ackerman and the other Q3 founders falsely represented that they were earning trading profits on behalf of their customers, and then misappropriated the customers' funds that were entrusted to them. Compl. ¶¶ 16-40.

8.      Defendants solicited customers by making false and misleading claims and omissions about the performance of the Q3's virtual currency trading.  Among other things, Defendants:

a.      knowingly and falsely represented to prospective Q3 customers that they were profitably trading virtual currencies earning monthly returns of approximately 15%. Compl. ¶ 3.

b.      fabricated accounting statements, newsletters containing false trading returns, and fictitious screenshots reflecting the amount of money under Q3's management to conceal their fraud. These fraudulent screenshots indicated that Q3's crypto currency trading accounts had grown to more than $200 million. Compl. ¶¶ 5, 26.

c.      knowingly and falsely represented to prospective and existing customers that Q3's virtual currency trading was consistently profitable and that Q3's money under management continued to grow. Compl. ¶ 24.

d.      knowingly and falsely represented to prospective and existing customers that the money in the Q3 trading account was secure because no one person could withdraw or transfer money from the Q3 trading account without the consent of one or more of the other founders. Compl. ¶ 27.

e.      fraudulently misrepresented to prospective and existing Q3 customers that the money in the Q3 trading account was safe because 70% of the funds in the trading account were kept in cash at all times and only 30% was used to trade. Compl. ¶ 28.

f.      failed to disclose that they misappropriated customers' deposits to the Q3 trading account. Compl. ¶ 31.

g.      failed to disclose that they diverted portions of new customers' deposits to other customers in the manner of a "Ponzi" scheme. Compl. ¶ 36.

In reality, Q3's crypto currency trading account never had more than $6 million. Defendants did not trade virtual currencies successfully and most Q3 customers' money was misappropriated or lost trading. Compl. ¶¶ 4, 26.

## II.  ARGUMENT

### A.  Jurisdiction and Venue

9.      This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, U.S.C. § 13a-1(a) (2018), which authorizes the Commission to seek injunctive and other relief in a U.S. district court against any person whenever it shall appear to the Commission that such person has engaged in any act or practice that violates the Act or Regulations. Compl. ¶ 9. The Commission has the authority to bring this action, and the Court has jurisdiction to hear it, because, as described in the Complaint, Defendants engaged in acts and practices constituting violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2020).

10.     The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).

11.     Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because Defendants are found in, inhabit, or transact business in this District, and because the acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District. As alleged in the complaint, Defendants fraudulently transacted business in the District. Specifically, Defendants used a bank in the District to deposit and transfer customer funds and a trading exchange in the District to trade virtual currencies. Compl. ¶ 10.

**B.** **Defendants' Fraudulent Virtual Currency Scheme Violated Section 6(c) of the Act and Regulation 180.1 (Count I – Fraud by Deceptive Device or Contrivance).**

12.     Section 6(c)(1) of the Act makes it "unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with . . . a contract of sale of any commodity in interstate commerce, . . . any manipulative or deceptive device or contrivance, in contravention of [the Regulations]." 7 U.S.C. § 9(1) (2018). In support of Section 6(c)(1), the Commission has adopted Regulation 180.1(a), which makes it unlawful for any person, in connection with any contract of sale of any commodity, to intentionally or recklessly:

> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or]
>
> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person[.]

17 C.F.R. § 180.1(a) (2020).

13.     To establish a violation of these provisions, the Commission need only show that a person (1) engaged in prohibited conduct (i.e., employed a fraudulent scheme; made a material misrepresentation, misleading statement, or deceptive omission; or engaged in a business practice that operated as a fraud); (2) in connection with the sale of a commodity in interstate commerce; (3) with scienter. *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018)

6

(entering judgment against defendants for violations of Section 6(c)(1) and Regulation 180.1(a) where they operated a deceptive and fraudulent virtual currency trading scheme and misappropriated investor funds); *see also CFTC v. Gelfman Blueprint, Inc.*, No. 17-cv-7181, 2018 WL 6320656, at *8-9 (S.D.N.Y. Oct. 16, 2018) (entering default judgment against defendants who violated Section 6(c)(1) and Regulation 180.1(a) by fraudulently soliciting and receiving funds from customers for the purpose of entering into contracts of sale of Bitcoin through electronic web-based trading platforms).

14.     By the conduct described above and in the Complaint, Defendants intentionally or recklessly, in connection with contracts of sale of a commodity in interstate commerce: (1) used or employed, or attempted to use or employ, a manipulative device, scheme, or artifice to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; and (3) engaged, or attempted to engage, in an act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

15.     Ackerman committed his violative acts within his capacity as a principal and agent of Q3H and Q3I. Compl. ¶¶ 41, 42. Thus, Q3H and Q3I are liable for Ackerman's violations of the Act and Regulations.

16.     As set forth in the Complaint, Defendants cheated and defrauded, and attempted to cheat and defraud, customers in connection with contracts of sale of virtual currency, a commodity in interstate commerce.  Among other things, Defendants falsely represented to customers that (1) that they were profitably trading virtual currencies earning monthly returns of approximately 15%; (2) that the money in the Q3 trading account was secure because no one

person could withdraw or transfer money from the Q3 trading account without the consent of one or more of the other founders;  (3) that the money in the Q3 trading account was safe because 70% of the funds in the trading account were kept in cash at all times and only 30% was used to trade; and (4) they failed to disclose that they misappropriated customers' deposits to the Q3 trading account.  Defendants further concealed and perpetuated their fraud by fabricated accounting statements, newsletters containing false trading returns, and fictitious screenshots reflecting the amount of money under Q3's management and diverted portions of new customers' deposits to other customers in the manner of a "Ponzi" scheme.

### C.    An Injunction Is Warranted

17.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## III.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

18.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), Defendants and all persons in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained, enjoined, and prohibited from directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly:

      a.    using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud;

      b.    making, or attempting to make, any untrue or misleading statement of a

material fact or to omit to state a material fact necessary in order to make

the statements made not untrue or misleading; and

c.     engaging, or attempt to engage, in any act, practice, or course of business,

which operates or would operate as a fraud or deceit upon any person;

in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and/or

Regulation 180.1(a) (2020).

19.     Defendants and all persons in active concert or participation with Defendants who

receive actual notice of this Order by personal service or otherwise, are also hereby permanently

restrained, enjoined, and prohibited from directly or indirectly:

a.     Trading on or subject to the rules of any registered entity (as that term is

defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

b.     Entering into any transactions involving "commodity interests" (as that

term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)), and/or virtual

currency for their own personal account or for any account in which they

have a direct or indirect interest;

c.     Having any commodity interests and/or virtual currency traded on their

behalf;

d.     Controlling or directing the trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account

involving commodity interests and/or virtual currency;

e.     Soliciting, receiving or accepting any funds from any person for the

purpose of purchasing or selling any commodity interests and/or virtual

currency;

f.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and/or

g.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2020)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38) (2018)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9) (2020).

## IV.    Restitution and Civil Monetary Penalty

**IT IS FURTHER ORDERED**

**A.    Restitution**

19.    Pursuant to Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2018), Defendants shall pay restitution in the amount of twenty-seven million ninety-two thousand nine hundred seven dollars and seven cents (**$27,092,907.70**) ("Restitution Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

20.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to customers of the Defendants, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution payments

from Defendants and make distributions as set forth below.  Because the Monitor is acting as an

officer of this Court in performing these services, the NFA shall not be liable for any action or

inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

21.     Defendants shall make Restitution Obligation payments, and any post-judgment

interest payments, under this Order to the Monitor in the name "Q3 Restitution

Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order,

certified check, bank cashier's check, or bank money order, to the Office of Administration,

National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606,

under cover letter that identifies the paying Defendants and the name and docket number of this

proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of

payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

22.     The Monitor shall oversee the Restitution Obligation and shall have the discretion

to determine the manner of distribution of such funds in an equitable fashion to the Defendants

customers identified by the Commission or may defer distribution until such time as the Monitor

deems appropriate.  In the event that the amount of Restitution Obligation payments to the

Monitor are of a de minimis nature such that the Monitor determines that the administrative cost

of making a distribution to customers is impractical, the Monitor may, in its discretion, treat such

restitution payments as civil monetary penalty payments, which the Monitor shall forward to the

Commission following the instructions for civil monetary penalty payments set forth in

Paragraph 29 below.

23.     Defendants shall cooperate with the Monitor as appropriate to provide such

information as the Monitor deems necessary and appropriate to identify Defendants' customers

to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendants shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

24.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

25.     The amounts payable to each customer shall not limit the ability of any customer of proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that may exist under state or common law.

26.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each of Defendants' customers who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendants to ensure continued compliance with any provision of this Order and to hold Defendants in contempt for any violations of any provision of this Order.

27.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.**     **Civil Monetary Penalty**

28.     Pursuant to Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018),

Defendants shall pay a civil monetary penalty in the amount of eighty-one million two hundred

seventy-eight thousand seven hundred twenty-three dollars and ten cents (**$81,278,723.10**)

("CMP Obligation").  If the CMP Obligation is not paid immediately, then post-judgment

interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and

shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order

pursuant to 28 U.S.C. § 1961 (2018).

29.     Defendants shall pay the CMP Obligation and any post-judgment interest by

electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank

money order.  If payment is to be made other than by electronic funds transfer, then the payment

shall be made payable to the Commodity Futures Trading Commission and sent to the address

below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> Telephone: (405) 954-6569
> Fax: (405) 954-1620
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or her

successor at the address above to receive payment instructions and shall fully comply with those

instructions.  Defendants shall accompany payment of the CMP Obligation with a cover letter

that identifies the payor and the name and docket number of this proceeding.  Defendants shall

simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial

Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street,

NW, Washington, DC 20581.

**C.      Provisions Related to Monetary Sanctions**

30.     Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial

payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver

of Defendants' obligation to make further payments pursuant to this Order, or a waiver of the

Commission's right to seek to compel payment of any remaining balance.

## V.      MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT:**

31.     Notice:  All notices required to be given by any provision in this Order shall be

sent by certified mail, return receipt requested as follows:

Notice to Commission:

Paul G. Hayeck
Deputy Director
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581

Notice to Monitor:

Office of Administration
National Futures Association
300 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606-3447

All such notices to the Commission or the NFA shall reference the name and docket number of

this action.

32.     Change of Address/Phone:  Until such time as Defendants satisfy in full their

Restitution Obligation and CMP Obligation as set forth in this Order, Defendants shall provide

written notice to the Commission by certified mail of any change to their telephone number and

mailing address within ten calendar days of the change.

33.     Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, the remainder of the Order and the application of its provision to any other person or circumstance shall not be affected by the holding.

34.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under his authority or control, and upon any person who receives actual notice of this Order, by personal service, email, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Defendants.

35.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify, or for relief from, the terms of this Order.

*          *          *

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Order of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendants Michael Ackerman, Q3 Holdings, LLC and Q3 I, LP* forthwith and without further notice.

**IT IS SO ORDERED** on this _____ day of _____, 20___.


_____
UNITED STATES DISTRICT JUDGE

15