**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL ACKERMAN, Q3 HOLDINGS, LLC, and Q3 I, LP, <br><br> Defendants. | Case No. 1:20-cv-01183-NRB |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**ENTRY OF FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL**
**MONETARY PENALTY, AND OTHER STATUTORY AND EQUITABLE RELIEF**
**AGAINST DEFENDANTS MICHAEL ACKERMAN, Q3 HOLDINGS, LLC and Q3 I, LP**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     PROCEDURAL HISTORY.................................................................................1

II.    SUMMARY OF FACTS ...............................................................................2

     A.    Defendants' Fraudulent Scheme ...................................................2

     B.    Facts Relating to Damages.............................................................4

III.    ARGUMENT .................................................................................................4

     A.    Final Judgment by Default Is Warranted Under Federal Rule
           of Civil Procedure 55 .....................................................................4

          1.    The Court Has Jurisdiction, and Venue Properly Lies
                in This District .................................................................5

          2.    The Defendants' Fraudulent Virtual Currency
                Scheme Violated Section 6(c) of the Act and Regulation 180.1
                (Count I – Fraud by Deceptive Device or Contrivance) ............................6

               a.    Defendants' Prohibited Conduct.......................................7

               b.    In Connection with a Contract of Sale of a
                      Commodity in Interstate Commerce ..............................8

                c.    Scienter .................................................................10

          3.    Principal-Agent Liability ...............................................10

     B.    Remedies and Damages ...............................................................11

          1.    Permanent Injunction ....................................................11

          2.    Restitution, Civil Monetary Penalty, and
                Post-Judgment Interest...................................................12

                a.    Restitution .................................................................12

                b.    Civil Monetary Penalty ...............................................14

i

   c.  Post-Judgment Interest ..................................................................16

IV. CONCLUSION..............................................................................................16

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b), Plaintiff Commodity Futures Trading Commission ("Commission") submits this Memorandum in support of its request that the Court enter final judgment by default against Defendants Michael Ackerman ("Ackerman"), Q3 Holdings, LLC ("Q3H") and Q3 I, LP ("Q3I") (collectively the "Defendants") and issue a final order that finds them liable for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2018), and its implementing regulations ("Regulations"), 17 C.F.R. pts. 1.1-190.10 (2020), and grants permanent injunctive relief, restitution, and a civil monetary penalty.  The Commission also submits the Declarations of Jason Gizzarelli ("Gizzarelli Decl.") and Dmitriy Vilenskiy ("Vilenskiy Decl.") along with their supporting exhibits including a copy of the case initiating document, summons, proof of service, clerk's certificates of default and an explanation of damages.

## I.    PROCEDURAL HISTORY

On February 11, 2020, the Commission filed a Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties ("Complaint" or "Compl.") against the Defendants, for violations of the Act and Regulations. ECF No. 1. The Complaint alleges that, from at least August 2017 through December 2019 (the "Relevant Period") Ackerman and the entities he founded, Q3H and Q3I, operated a fraudulent scheme in which they solicited and misappropriated funds to purportedly trade virtual currencies.  Compl. ¶¶ 1, 41.

Ackerman was personally served with the Summons and Complaint on February 25, 2020.  ECF No. 21. Ackerman failed to appear or answer the Complaint, and the Clerk of Court, pursuant to Federal Rule of Civil Procedure 55(a), entered Ackerman's default on July 22, 2020. ECF No. 33. Likewise, Q3H and Q3I were personally served with the Summons and Complaint through their registered agent on February 28, 2020.  ECF Nos. 22, 23. Q3H and Q3I also failed

1

to appear or answer the Complaint and the Clerk of Court similarly entered their defaults on July 22, 2020. ECF Nos. 36, 37.  The Commission now moves for a final judgment by default against all three Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2).

## II.   SUMMARY OF FACTS

As set forth above, Defendants have failed to file any responsive pleading, and the Clerk of Court entered their defaults pursuant to Federal Rule of Civil Procedure 55(a).  Accordingly, pursuant to Federal Rule of Civil Procedure 8(b)(6), the allegations in the Complaint, except those related to the amount of damages, are deemed admitted.  Defendants' violations of the Act and the Regulations are also conclusively established by the following evidence:

### A.   Defendants' Fraudulent Scheme

As established by the deemed admitted allegations in the Complaint, during the Relevant Period Defendants fraudulently induced customers to deposit funds into the personal account of a Q3 founder, or Q3's bank account, for the purpose of converting those funds to cryptocurrency and then purportedly traded by Ackerman. Compl. ¶ 19. Ackerman and the other Q3 founders falsely represented that they were earning trading profits on behalf of their customers, and then misappropriated the customers' funds that were entrusted to them. Compl. ¶¶ 16-40.

Ackerman solicited customers by making false and misleading claims and omissions about the performance of the Q3's virtual currency trading.  Among other things, Ackerman and Defendants:

(1)    knowingly and falsely represented to prospective Q3 customers that they were profitably trading virtual currencies earning monthly returns of approximately 15%. Compl. ¶ 3.

2

(2)     fabricated accounting statements, newsletters containing false trading returns, and fictitious screenshots reflecting the amount of money under Q3's management to conceal their fraud. These fraudulent screenshots indicated that Q3's crypto currency trading accounts had grown to more than $200 million. Compl. ¶¶ 5, 26.

(3)     knowingly and falsely represented to prospective and existing customers that Q3's virtual currency trading was consistently profitable and that Q3's money under management continued to grow. Compl. ¶ 24.

(4)     knowingly and falsely represented to prospective and existing customers that the money in the Q3 trading account was secure because no one person could withdraw or transfer money from the Q3 trading account without the consent of one or more of the other founders. Compl. ¶ 27.

(5)     fraudulently misrepresented to prospective and existing Q3 customers that the money in the Q3 trading account was safe because 70% of the funds in the trading account were kept in cash at all times and only 30% was used to trade. Compl. ¶ 28.

(6)     failed to disclose that they misappropriated customers' deposits to the Q3 trading account. Compl. ¶ 31.

(7)     failed to disclose that they diverted portions of new customers' deposits to other customers in the manner of a "Ponzi" scheme. Compl. ¶ 36.

In reality, Q3's crypto currency trading account never had more than $6 million. Defendants did not trade virtual currencies successfully and most Q3 customers' money was misappropriated or lost trading. Compl. ¶¶ 4, 26.

3

### B.     Facts Relating to Damages

During the Relevant Period, Defendants solicited and misappropriated at least $32 million from more than 150 Q3 customers.[1]  Compl. ¶ 30. Defendants directed Q3 customers to transfer funds into bank accounts controlled by or operated for the benefit of Defendants. Compl. ¶ 33. Less than $10 million of the $32 million in customer funds was wired to virtual currency exchanges. Compl. ¶ 1. Defendants misappropriated a substantial majority of the Q3 customers' funds for improper and unauthorized uses, such as to wrongfully enrich themselves through the purchase of homes, cars, and other luxury items. Compl. ¶ 31. Ackerman misappropriated approximately $7.4 million for himself, and used these funds to purchase several homes, among other things. Compl. ¶ 32.

## III.    ARGUMENT

### A.     Final Judgment by Default Is Warranted Under Federal Rule of Civil Procedure 55.

Federal Rule of Civil Procedure 55(b) authorizes litigants to seek default judgment against a party who has failed to plead or otherwise defend an action. This rule "tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court." *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993)). A court may enter default judgment "if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2,*

---

[1] In its Complaint, the Commission alleged that the Defendants fraudulently solicited at least $33 million.  As explained in the *Declaration of Dmitriy Vilenskiy* filed herewith, the Commission is prepared to show that Defendants received at least $32,451,492.23 from their customers.

*Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

Here, Defendants were properly served with the summons and complaint, and have failed to answer or otherwise file a responsive pleading.  ECF Nos. 21-23, 33, 36-37. Upon the Commission's request, the Clerk of Court entered default against Ackerman on July 22, 2020. ECF No. 33. Ackerman is an adult who is not incompetent and is not currently on active duty in any branch or division of the United States military. Gizzarelli Decl. ¶ 10. This case, therefore, does not implicate the Servicemembers Civil Relief Act, 50 U.S.C. § 3901 *et seq.* (2018), and, as established below, default judgment is appropriate and should be entered.

**1.      The Court Has Jurisdiction, and Venue Properly Lies in This District.**

The Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, U.S.C. § 13a-1(a) (2018), which authorizes the Commission to seek injunctive and other relief in a U.S. district court against any person whenever it shall appear to the Commission that such person has engaged in any act or practice that violates the Act or Regulations. Compl. ¶ 9. The Commission has the authority to bring this action, and the Court has jurisdiction to hear it, because, as described in the Complaint, Defendants engaged in acts and practices constituting violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2020).  The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).

Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because Defendants are found in, inhabit, or transact business in this District, and

because the acts and practices in violation of the Act occurred, are occurring, or are about to

occur, within this District. As alleged in the complaint, Defendants fraudulently transacted

business in the District. Specifically, Defendants used a bank in the District to deposit and

transfer customer funds and a trading exchange in the District to trade virtual currencies. Compl.

¶ 10.

### 2.      Defendants' Fraudulent Virtual Currency Scheme Violated Section 6(c) of the Act and Regulation 180.1 (Count I – Fraud by Deceptive Device or Contrivance).

Section 6(c)(1) of the Act makes it "unlawful for any person, directly or indirectly, to use

or employ, or attempt to use or employ, in connection with . . . a contract of sale of any

commodity in interstate commerce, . . . any manipulative or deceptive device or contrivance, in

contravention of [the Regulations]."  7 U.S.C. § 9(1) (2018). In support of Section 6(c)(1), the

Commission has adopted Regulation 180.1(a), which makes it unlawful for any person, in

connection with any contract of sale of any commodity, to intentionally or recklessly:

> (1) Use or employ, or attempt to use or employ, any manipulative
> device, scheme, or artifice to defraud;
>
> (2) Make, or attempt to make, any untrue or misleading statement of a
> material fact or to omit to state a material fact necessary in order to make
> the statements made not untrue or misleading; [or]
>
> (3) Engage, or attempt to engage, in any act, practice, or course of
> business, which operates or would operate as a fraud or deceit upon any
> person[.]

17 C.F.R. § 180.1(a) (2019). To establish a violation of these provisions, the Commission need

only show that a person (1) engaged in prohibited conduct (i.e., employed a fraudulent scheme; made a material misrepresentation, misleading statement, or deceptive omission; or engaged in a business practice that operated as a fraud); (2) in connection with the sale of a commodity in interstate commerce; (3) with scienter. *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018) (entering judgment against defendants for violations of Section 6(c)(1) and Regulation 180.1(a) where they operated a deceptive and fraudulent virtual currency trading scheme and misappropriated investor funds); *see also CFTC v. Gelfman Blueprint, Inc.*, No. 17-cv-7181, 2018 WL 6320656, at *8-9 (S.D.N.Y. Oct. 16, 2018) (entering default judgment against defendants who violated Section 6(c)(1) and Regulation 180.1(a) by fraudulently soliciting and receiving funds from customers for the purpose of entering into contracts of sale of Bitcoin through electronic web-based trading platforms). Here, the Commission satisfies each of these elements, as established by the following:

### a.    Defendants' Prohibited Conduct

As detailed in the Complaint, Defendants engaged in prohibited conduct under Section 6(c)(1) of the Act and Regulation 180.1(a) by making material misrepresentations and omissions to their customers, knowingly or with reckless disregard for the truth, as part of a scheme to solicit and misappropriate their customers' funds. "Whether a misrepresentation has been made depends on the 'overall message' and the 'common understanding of the information conveyed.'" *CFTC v. Rolando*, 589 F. Supp. 2d 159, 168 (D. Conn. 2008) (quoting *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002)). The representations should be viewed through the eyes of an "objectively reasonable" person who would interpret the overall message. *R.J. Fitzgerald*, 310 F.3d at 1328-29. A statement or omission is material "if a reasonable investor would consider it important in deciding whether to make an investment." *McDonnell*,

332 F. Supp. 3d at 720 (*quoting CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1327 (11th Cir. 2018)).  "[M]isrepresentations concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law." *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000), *aff'd in relevant part sub nom.*, *CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002).

Among other material misrepresentations, Defendants falsely represented to customers 1) the monthly rate of return for the Q3 accounts; 2) the total value of the Q3 account; 3) that Q3 trading accounts were secure because withdrawals and transfers required verification from multiple Q3 founders. Defendants also misappropriated customer funds and never achieved the fraudulently promised results to Q3 customers. Compl. ¶ 47. Defendants omitted material information from their solicitations of prospective customers, including that they misappropriated customers' deposits and that so-called profit payments were in fact the diverted principal deposits of other victims.  Because a reasonable investor would consider profitability and the use of funds central to making an investment decision, Defendants made material misrepresentations and omissions to customers.  For all of these reasons, Defendants employed a fraudulent scheme in violation of Section 6(c)(1) and Regulation 180.1(a).

### b.    In Connection with a Contract of Sale of a Commodity in Interstate Commerce

Defendants' fraudulent acts were also in connection with, and contemporaneous with, contracts of sale of a commodity in interstate commerce.[2] First, virtual currency is a "commodity" within the meaning of Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018).  *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) ("Virtual currencies can be

---

[2] Section 1a(13) of the Act, 7 U.S.C. § 1(a)(13) (2018), defines the term "contract of sale" to include sales, agreements of sale, and agreements to sell.

regulated by [the] CFTC as a commodity. . . . They fall well-within the common definition of

'commodity' as well as the [Act's] definition of 'commodities' as 'all other goods and articles . .

. in which contracts for future delivery are presently or in the future dealt in." (quoting 7 U.S.C.

§ 1a(9) (2018))), *reconsideration denied*, 321 F. Supp. 3d 366 (E.D.N.Y. 2018); *Gelfman*

*Blueprint*, 2018 WL 6320656, at *8 ("Virtual currencies such as Bitcoin are encompassed in the

definition of "commodity" under Section 1a(9) of the Act."); *CFTC v. My Big Coin Pay, Inc.*,

334 F. Supp. 3d 492, 495-98 (D. Mass. 2018) (holding that a non-Bitcoin virtual currency is a

"commodity" under the Act).

Second, the "in connection with" requirement of Section 6(c)(1) of the Act and

Regulation 180.1 is satisfied in this case because the contracts of sale and the fraud were not

independent events. *See McDonnell*, 332 F. Supp. 3d at 722-23 (citing *SEC v. Zandford*, 535

U.S. 813, 819 (2002), for the proposition that the "in connection with" requirement should be

construed flexibly, "not technically and restrictively").[3] Defendants' fraudulent scheme relied on

inducing customers to deposit their funds with Q3 accounts.  Compl. ¶¶ 16-31. Defendants also

made numerous material misrepresentations directly related to the making of contracts of sale of

virtual currency.

Defendants solicited customers' funds by representing to customers that all deposits

would lead to "winning trades" "predicting the direction of momentum for a coin 75% of the

time" —effectively, contracts of sale—that "nets us positive every day.". Compl. ¶ 29. Both their

efforts to induce the deposits of funds and their misrepresentations about virtual currency trading

satisfy the "in connection with" test.  *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 537

---

[3] "In interpreting the 'in connection with' requirement of the Commodities Exchange Act, courts generally look to interpretations of the 'in connection with' requirement of [Section] 10(b) of the Securities Exchange Act."  *SEC v. Lee*, 720 F. Supp. 2d 305, 338 (S.D.N.Y. 2010) (addressing Commission claims under Section 4c(b) of the Act and Regulation 33.10).

(2d Cir. 1999) ("The Second Circuit has broadly construed the phrase 'in connection with' . . . to mandate only that the act complained of somehow induced the purchaser to purchase the security at issue."); *McDonnell*, 332 F. Supp. 3d at 723 (holding that material misrepresentations and omissions and misappropriation of customer funds relating to proposed trading in virtual currency was in connection with contracts of sale of commodities in interstate commerce).[4]

### c.    Scienter

Finally, to establish the scienter element, the Commission need only show that Defendants' conduct was intentional or reckless, and this standard is satisfied if a defendant "intended to defraud, manipulate, or deceive, or if [the] [d]efendant's conduct represents an extreme departure from the standards of ordinary care." *R.J. Fitzgerald*, 310 F.3d at 1328.  It is also satisfied when a defendant's conduct involves "highly unreasonable omissions or misrepresentations . . . that present a danger of misleading [customers] which is either known to the [d]efendant or so obvious that [d]efendant must have been aware of it." *Id.* (quotation omitted). In this case, Defendants acted with scienter when they misled and defrauded customers by knowingly making material misrepresentations and omissions and by misappropriating their deposits.

### 3.    Principal-Agent Liability

Under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2019), a principal is strictly liable for the violations of its officials, agents, or other persons acting for it within the scope of their employment or office.  *Rosenthal & Co. v.*

---

[4] That Defendants misappropriated customers' deposits without executing the promised trades does not alter this result.  *Cf. Zandford*, 535 U.S. at 819 (accepting the SEC's interpretation that the "in connection with" requirement is met where "a broker . . . accepts payment for securities that he never intends to deliver"); *Fishman v. Phila. Fin. Life Assurance Co.*, No. 11-cv-1283, 2016 WL 2347921, at *8 (S.D.N.Y. May 3, 2016) ("That no covered securities were actually purchased is of no import. What matters is that the plaintiff intended to invest in covered securities.") (citation omitted).

*CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) ("[W]e have no doubt that section 2(a)(1) imposes strict liability on the principal . . . provided, of course, as the statute also states expressly, that the agent's misconduct was within the scope or (equivalently but more precisely) in furtherance of the agent."). Ackerman committed his violative acts within his capacity as a principal and agent of Q3H and Q3I. Compl. ¶¶ 41, 42. Thus, Q3H and Q3I are liable for Ackerman's violations of the Act and Regulations.

### B.      Remedies and Damages

#### 1.      Permanent Injunction

Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), empowers the Commission to seek permanent injunctive relief whenever it appears to the Commission that any person has engaged in, is engaging in, or is about to engage in any violation of the Act or Regulations. "[I]n actions for a statutory injunction, such as this, the agency need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits, but only that there is a reasonable likelihood that the wrong will be repeated." *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141 (2d Cir. 1977) (citing *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807-09 (2d Cir. 1975)); *see also SEC v. Aaron*, 605 F.2d 612, 623 (2d Cir. 1979), *vacated on other grounds*, 446 U.S. 680 (1980) ("The critical question in determining whether the public interest requires the imposition of a permanent injunction is 'whether there is a reasonable likelihood that the wrong will be repeated.'" (quoting *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972))),. In determining whether a "reasonable likelihood" of future violations exists, courts generally consider the egregiousness of the defendant's actions; the isolated, recurrent, or systematic nature of the violations; the degree of scienter involved; the defendant's recognition of the wrongfulness of the conduct; and the likelihood that the

defendant's customary business activities will present opportunities for future violations. *See Mgmt. Dynamics*, 515 F.2d at 807. "[T]he likelihood of future violations of law can be inferred from defendants' past illegal conduct." *CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 677 (S.D.N.Y. 1979).

As set forth above, this is a case where Defendants knowingly stole funds entrusted to them. Rather than admitting their wrongdoing, Defendants took pains to conceal their fraud by, among other things, fabricating account balances and making "Ponzi" scheme-like payments to customers. Given this sustained misconduct and high degree of scienter, a permanent injunction is warranted. The Commission respectfully requests that the Court enter a permanent injunction in the form of or consistent with the language contained in the proposed order filed herewith.

### 2.      Restitution, Civil Monetary Penalty, and Post-Judgment Interest

"Although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of admissible evidence, a hearing is unnecessary so long as (1) the [c]ourt has determined the proper rule for calculating damages, and (2) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment[.]" *CFTC v. 4X Sols., Inc.*, No. 13-cv-2287, 2015 WL 9943241, at *2 (S.D.N.Y. Dec. 28, 2015) (internal citations omitted) (report and recommendation), *adopted by* 2016 WL 397672 (S.D.N.Y. Jan. 29, 2016). The court may rely on affidavits or documentary evidence in the record to determine the appropriate sum rather than hold an evidentiary hearing. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).  Here, a hearing is not necessary because all damages the Commission seeks are substantiated by the declarations and exhibits that accompany this Motion.

### a.    Restitution

Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2018), authorizes the Commission to seek and the Court to order "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)[.]" Restitution exists to restore the status quo and make the injured party whole.  *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (equitable restitution consists of "restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant"). Accordingly, courts calculate restitution "as the difference between what [a defendant] obtained and the amount customers have already received back." *CFTC v. Ross*, No. 09-cv-5443, 2014 WL 6704572, at *3 (N.D. Ill. Nov. 26, 2014). Where, as here, Defendants engaged in systematic and pervasive fraud, all funds obtained by the illegal enterprise may be included in the calculation of restitution.  *See McDonnell*, 332 F. Supp. 3d at 726-27 (holding that in cases of pervasive fraud under the Act, the appropriate calculation of restitution includes all customer losses even where only a subset of those customers testify to the losses they sustained on the grounds that reliance on the defendant's fraud is presumed); *see also CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1352 (S.D. Fla. 2014) (determining in connection with violations of Section 6(c) of the Act and Regulation 180.1 that "[t]he systematic and pervasive nature of [the defendant's] fraud necessitates restitution not only for the retail customers who testified to the losses they sustained due to [the defendant's] scheme, but for all of [defendant's] customers as well").

Here, Defendants solicited approximately $32 million from customers and less than $10 million of Q3 customer funds was wired to virtual currency exchanges. Compl. ¶¶ 1, 30. Defendants misappropriated a substantial majority of the Q3 customers' funds for improper and unauthorized uses, such as to wrongfully enrich themselves through the purchase of homes, cars,

and other luxury items. Compl. ¶ 31. Ackerman misappropriated approximately $7.4 million for himself, and used these funds to purchase several homes, among other things. Compl. ¶ 32.

Accordingly, the Commission requests that the Court order Defendants to pay restitution in the amount of $27,092,907.70 which reflects the total customer losses proximately caused by the Defendants' violations of the Act ($32,451,492.23) minus the funds the Commission presently understands Defendants returned to customers ($5,358,584.53), together with any post-judgment interest. *See McDonnell*, 332 F. Supp. 3d at 726-27 (ordering restitution in the amount of funds received from all customers as part of fraudulent virtual currency trading scheme, reduced by the value of a virtual currency transfer by the defendant to one investor).

### b.     Civil Monetary Penalty

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2019), authorize the imposition of a civil monetary penalty ("CMP") equal to the higher $182,031[5] per violation or triple a defendant's monetary gain from each violation of the Act or Regulations. The Court is "free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent." *CFTC v. Trimble*, No. 11–cv–02887, 2013 WL 317576, at *9 (D. Colo. Jan. 28, 2013) (citing *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)). In determining the amount of a CMP, courts consider the nature of the violation of the Act or Regulations, whether scienter was present, the consequences of the violation, the financial benefit to defendants, and the harm to customers.  *See CFTC v. Arrington*, 998 F. Supp. 2d 847, 875 (D. Neb. 2014). "Conduct that violates the core provisions of the Act, such as customer fraud, is considered serious."

---

[5] At the time the Complaint was filed, pursuant to 17 C.F.R. § 143.8(b)(1) (2019), the allowable inflation-adjusted civil monetary penalty was $182,031 per violation of the Act for non-manipulation claims brought in federal injunctive actions under 7 U.S.C. § 13a-1.

*McDonnell*, 332 F. Supp. 3d at 728 (citing *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995)).

The facts of this case warrant the imposition of a significant CMP. "In light of the core relationship of the anti-fraud regulations to the purpose of the Act, the egregiousness of Defendants' intentional conduct to misappropriate customer and investor funds, . . . and [Defendants] failure to accept any responsibility or attempt to ameliorate the wrongful conduct[,]" *Id.*, the Commission requests that the Court order Defendants to pay a CMP equal to three times the value of the funds Defendants' misappropriated from customers, $81,278,723.10, together with any post-judgment interest. Such a penalty is within the Court's statutory authority, will protect the Commission's regulatory interests and integrity of the markets, and will send a clear message to deter others from engaging in a similar fraudulent scheme. *See, e.g.*, *id.* (after trial, imposing CMP of triple the gain); *CFTC v. Dean*, No. 18-cv-00345, 2018 WL 4573029, at *12 (E.D.N.Y. July 9, 2018) (default) (imposing CMP of triple the gain); *CFTC v. SK Madison Commodities, LLC*, No. 14-cv-02025, 2014 WL 3887755, at *5 (S.D.N.Y. June 9, 2014) (entering default judgment and ordering a CMP of "triple the amount misappropriated" where the defendants "committed repeated violations of core provisions of the [Act] and Regulations"); *Rolando*, 589 F. Supp. 2d at 173-74 (noting that "obtaining customer funds and then hiding [the defendant's] true conduct from his customers were serious violations of the Act . . . that strike at the very core of the Act's regulatory system," requiring "a substantial civil monetary penalty"); *CFTC v. Emerald Worldwide Holdings, Inc.*, No. 03-cv-8339, 2005 WL 1130588, at *13 (C.D. Cal. Apr. 19, 2005) (imposing CMP of approximately triple the gain).

15

c.      **Post-Judgment Interest**

The Commission also requests that the Court order Defendants to pay post-judgment interest on the restitution and civil monetary penalty amounts. Post-judgment interest should be paid at the then-prevailing Treasury Bill rate, pursuant to 28 U.S.C. § 1961(a) (2018).

## IV.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant the present Motion, enter final judgment by default against Defendants, and, to administer the permanent injunction, restitution judgment, and civil monetary penalty, issue a final order in the form of the proposed order submitted herewith.

Dated:  January 7, 2021                 Respectfully submitted,

By:      S/Jason Gizzarelli
Jason Gizzarelli
Luke Marsh
COMMODITY FUTURES TRADING COMMISSION
Division of Enforcement
1155 21st Street, NW
Washington, DC 20581
jgizzarelli@cftc.gov
Lmarsh@cftc.gov

*Attorneys for Plaintiff*

16