EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Civil Case No.: 1:20-cv-1183 |
| Plaintiff, | COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS |
| v. | |
| MICHAEL ACKERMAN, Q3 HOLDINGS, LLC, and Q3 I, LP, | |
| Defendants. | |

## I.    INTRODUCTION

1.        From at least August 2017 through December 2019 (the "Relevant Period"), Defendant Michael Ackerman ("Ackerman") and the entities he founded, Defendant Q3 Holdings, LLC ("Q3H"), and Defendant Q3 I, LP ("Q3I," and together with Q3H, "Q3"), operated a fraudulent scheme in which they solicited and misappropriated funds to purportedly trade virtual currencies.  Based on Ackerman's and Q3's (collectively "Defendants") fraudulent misrepresentations, more than 150 individuals and entities ("Q3 customers") deposited at least $33 million with Q3.  However, less than $10 million of the $33 million in Q3 customer funds was wired to virtual currency exchanges.

2.        Instead, Defendants transferred more than $25 million of Q3 customers' funds to personal bank accounts of Ackerman and the two other individuals with whom Ackerman founded Q3.  Ackerman himself received more than $7 million of Q3 customers' funds.

3.　　　To entice potential Q3 customers to invest in their scheme, Defendants knowingly and falsely represented that they were profitably trading virtual currencies earning monthly returns of approximately 15%.

4.　　　Despite Defendants' representations to potential and existing Q3 customers that their virtual currency trading was highly successful and that Q3 customers were free to withdraw the profits earned in their accounts after one year, Defendants did not trade virtual currencies successfully and most Q3 customers' money was misappropriated or lost trading.

5.　　　To conceal their fraud, Defendants and the other Q3 founders provided Q3 customers with false accounting statements, newsletters containing false trading returns, and fictitious screenshots reflecting the amount of money under Q3's management.

6.　　　 Through this conduct, Defendants were engaged, are engaging, or are about to engage in fraudulent acts and practices in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2018), and the Commission's Regulations ("Regulations"), 17 C.F.R. pts. 1-190 (2019), specifically, Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a)(2019)

7.　　　Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), the Commission brings this action to enjoin such acts and practices and compel compliance with the Act and the Regulations.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

8.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.      JURISDICTION AND VENUE

9.     Jurisdiction.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), provides that district courts have jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in, an act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

10.     Venue.  Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because Defendants are found in, inhabit, or transact business in this District, and because acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District.   As alleged in this complaint, Defendants fraudulently transacted business in the District.  Specifically, Defendants used a bank in the District to deposit and transfer customer funds and a trading exchange in the District to trade virtual currencies.

## III.      THE PARTIES

11.     Plaintiff **Commodity Futures Trading Commission** ("Commission" or "CFTC") is an independent federal regulatory agency that is charged by Congress with the

administration and enforcement of the Act and the Regulations.  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

12.     Defendant **Q3 Holdings, LLC** is a limited liability company formed in Delaware on April 10, 2018.  Q3H's last known address is 1994 Carolina Circle NE, St. Petersburg, Florida.  Q3H has never been registered with the Commission.

13.     Defendant **Q3 I, LP** is a limited partnership formed in Delaware on July 27, 2018.  Q3I's last known address is1994 Carolina Circle NE, St. Petersburg, Florida.  Q3I has never been registered with the Commission.

14.     Defendant **Michael Ackerman** is a resident of Alliance, Ohio.  Ackerman was primarily responsible for the trading at Q3.  Ackerman has never been registered with the Commission.

IV.     <u>STATUTORY BACKGROUND</u>

15.     Virtual currencies, like those Q3 purported to trade on behalf of its customers, are encompassed in the definition of "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018).  For the purposes of this Complaint, a virtual currency means a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value, but does not have legal tender status in any jurisdiction.  Virtual currencies are distinct from "real" currencies, which are the coin and paper money of the United States or another country that are designated as legal tender, circulate, and are customarily used and accepted as a medium of exchange in the country of issuance.  Virtual currencies typically use cryptographic protocols to secure transactions in that asset and use decentralized networks to track transactions between persons who are denominated only by publicly visible strings of characters.  The transactions are captured in single blocks at a time, which independent operators (called "miners," a virtual

analogy to actual miners whose efforts unearth gold, silver, and other precious metals) confirm by performing algorithmic proofs of work and for which they are usually awarded a sum of the virtual currency in question. The public nature of the decentralized ledger allows people to recognize the transfer of virtual currency from one user to another without requiring any central intermediary in which both users need to trust.

## V. FACTS

### A. Operation of Q3

16. In early 2017, Ackerman and the other Q3 founders opened a virtual currency trading account at a cryptocurrency exchange known as Kraken (the "Kraken account").

17. The Kraken account was initially funded with a combined $15,000 from Ackerman and the other Q3 founders, and Ackerman was responsible for the virtual currency trading in the account.

18. In or around July 2017, Ackerman and the other Q3 founders began to solicit family and friends to trade virtual currencies.

19. To open an "account" with Q3, Q3 customers sent funds to the personal bank account of a Q3 founder, or Q3's bank account, where the funds were in turn transferred to a cryptocurrency exchange virtual currency account purportedly traded by Ackerman.

20. Q3 had virtual currency trading accounts at cryptocurrency exchanges Kraken, Gemini, Coinbase, and Bitfinex.

21. In these Q3 virtual currency trading accounts, Ackerman was purportedly using an algorithm he had created to trade various virtual currencies.

5

22.     Q3 sustained a substantial trading loss in August 2017, after which Ackerman told the other Q3 founders that he needed to change his trading strategy.  As a result, the other Q3 founders agreed to change the fund's trading strategy and informed Q3's existing customers.

23.     After Ackerman implemented his purported new trading strategy using an algorithm he created, he reported to the other Q3 founders that his virtual currency trading was highly successful, averaging monthly trading returns of approximately 15%.

B.     <u>Defendants Made False and Misleading Representations, and Omitted Material Facts, To Solicit Q3 Customers</u>

24.     During the Relevant Period, Defendants and other Q3 founders told prospective and existing Q3 customers that Q3's virtual currency trading was consistently profitable and that Q3's money under management continued to grow.

25.     During the Relevant Period, Defendants and other Q3 founders sent Q3 customers fraudulent account statements that contained fictitious account balances and monthly totals.

26.     During the Relevant Period, Defendants and other Q3 founders presented prospective and existing Q3 customers with fraudulent screenshots of Q3's purported trading. These fraudulent screenshots indicated that Q3's crypto currency trading accounts had grown to more than $200 million.  In truth, Q3's primary crypto currency trading account never had more than $6 million.

27.     During the Relevant Period, Defendants and other Q3 founders fraudulently misrepresented to  prospective and existing Q3 customers that the money in the Q3 trading account was secure because no one person could withdraw or transfer money from the Q3 trading account without the consent of one or more of the other founders.

28.     During the Relevant Period, Defendants and other Q3 founders fraudulently misrepresented to  prospective and existing Q3 customers that the money in the Q3 trading

account was safe because 70% of the funds in the trading account were kept in cash at all times and only 30% was used to trade.

29.    During the Relevant Period, Defendants knowingly made the following false and fraudulent statements and material omissions to prospective and existing Q3 customers to conceal Defendants' fraudulent scheme:

   a)   "On average we make about 0.5% daily on invested income.  Yes you read that correctly.  And that amount is compounded continuously as profit is made."

   b)   "[W]e can offer tremendous returns of roughly 15% a month with precise and limited risk."

   c)   "We make roughly 13-15% total profit for each month. This has been a consistent pattern over the last six months."

   d)   "Profits are continuously reinvested thus compounding continuously.  These returns have been consistent since August 2017."

   e)   "There are a few costs of operations (minor salaries, an office, licensing fees and other costs)."

   f)   "The algos are right about 75% of the time and wrong 25%.  So we make much more money than we lose."

   g)   "It's much less risky than buying and holding a coin that could go to zero."

   h)   "Luckily the algos are correct in predicting the direction of momentum for a coin 75% of the time – I'll take that in Vegas any day.  We end up losing on 1 of 4 trades. Nets us positive everyday."

   i)   "In fact we haven't had a negative day in 6 months!"

j) "[B]y having a mathematically guaranteed loss ratio that is below 25%, we can guarantee winning trades as long as there is volatility in the marketplace."

k) "[W]e have mathematically determined a strategy that allows us to gain more than we lose in an any life cycle."

l) "We continue to remain spot on with our programming, continual enhancements and ratio goals. What started out with an eye towards a great way to make a little money has quickly manifested into a longer-term proposition."

m) "It's been a winning strategy that has been tested through every peak and trough of this market over the last two years without failing."

n) "Algorithms are managed 24/7 by our chief trading officer, Michael Ackerman."

C.     Defendants Misappropriated Q3 Customers' Funds

30.     During the Relevant Period, Defendants received in excess of approximately $33 million from more than 150 Q3 customers.

31.     During the Relevant Period, Defendants misappropriated a substantial majority of the Q3 customers' funds for improper and unauthorized uses, such as to wrongfully enrich themselves through the purchase of homes, cars, and other luxury items.

32.     Ackerman misappropriated approximately $7.4 million for himself, and used these funds to purchase several homes, among other things.

33.     During the Relevant Period, Defendants directed Q3 customers to transfer funds into bank accounts controlled by or operated for the benefit of Defendants.

34.     For instance, Defendants instructed Q3 customers to transfer funds into a bank account held in the name Q3 at Signature Bank.

35.     Upon receipt, or very soon thereafter, these customer funds were transferred to other accounts controlled by Ackerman or other Q3 founders, where the money was misappropriated by Defendants.

36.     To the extent any Q3 customers received any purported investment redemptions from the Defendants, those purported redemptions actually consisted of funds that Defendants misappropriated from other Q3 customers, in the nature of a Ponzi scheme.

37.     For example, on October 1, 2019, Q3 held $873,000 in its Q3I account and $1,996,457.11 in its Q3H accounts at Signature Bank.  Then in early October 2019, Q3 received a redemption request for $3,000,000 from existing Q3 Customer A.

38.     To meet Customer A's $3,000,000 redemption request, Q3 transferred approximately $996,000 of other Q3 customer funds from Q3's trading account at a virtual-currency exchange to its Q3 I, LP bank account at Signature Bank, from which Customer A's $3,000,000 redemption request was paid.

39.     Additionally, from October 1, 2019, through October 2, 2019, Q3 received new funds from five customers totaling $797,000.  Q3 deposited these new funds into its Signature Bank account.

40.      Then on October 2, 2019, Defendants wired $500,000 to Ackerman and $517,767.16 to the other Q3 founders from the Q3 Signature Bank account.

C.     Ackerman Was a Controlling Person of Q3

41.     Ackerman was a controlling person of Q3.  Ackerman was a founder of Q3 and had trading authority over the Q3 trading accounts.  Ackerman also created the algorithm that Q3 used to conduct the limited trading it did and Ackerman prepared reports and statements centered

on his trading that were given to Q3 customers.  Ackerman also had the ability to hire, fire, and

set salaries for certain employees at Q3.

> D.     Ackerman Acted as an Agent for Q3

42.     Through his solicitation of potential and existing Q3 customers, his active

marketing of Q3 by providing information regarding his trading of the Q3 accounts, and his

cryptocurrency trading, Ackerman acted as an agent of Q3.

VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND REGULATIONS

Count I—Fraud by Deceptive Device or Contrivance

Violations of Section 6(c)(1) of the Act and
Regulation 180.1(a) by Defendants

43.     Paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

44.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), makes it unlawful for any

person, directly or indirectly, to:

> use or employ, or attempt to use or employ, in connection with . . .
> a contract of sale of any commodity in interstate commerce . . . any
> manipulative or deceptive device or contrivance, in contravention
> of [Regulation 180.1] . . . .

45.     Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2019), provides:

> It shall be unlawful for any person, directly or indirectly, in
> connection with any  . . .  contract of sale of any commodity in
> interstate commerce . . . to intentionally or recklessly:
> (1) Use or employ, or attempt to use or employ, any manipulative
> device, scheme, or artifice to defraud;
> (2) Make, or attempt to make, any untrue or misleading statement
> of a material fact or to omit to state a material fact necessary in
> order to make the statements made not untrue or misleading;
> (3) Engage, or attempt to engage, in any act, practice, or course of
> business, which operates or would operate as a fraud or deceit
> upon any person . . . .

46.     Virtual currencies are encompassed in the definition of "commodity" under

Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018).

47.     As described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of commodities in interstate commerce (i.e., virtual currencies), making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading, including without limitation, the following:

> a)   Issuing written statements misrepresenting the monthly rate of return for the Q3 accounts;
>
> b)   Issuing written statements mispresenting the total value of the Q3 account;
>
> c)   Verbally misrepresenting that Q3 trading accounts were secure because withdrawals and transfers required verification from multiple Q3 founders; and
>
> d)   Failing to disclose, and omitting, that Defendants were misappropriating Q3 customer funds.

48.     As described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of a commodity in interstate commerce (i.e., virtual currencies), using or employing or attempting to use or employ deceptive devices, schemes, or artifices to defraud, and engaged or attempted to engage in acts, practices, or courses of business, which operate or would operate as a fraud or deceit upon any person, by soliciting customers with false and misleading statements about Q3's trading activity, providing Q3 customers with false account statements and screenshots, and misappropriating Q3 customers' funds.

49.     Defendants engaged in the acts and practices described above intentionally or recklessly.

50.     By this conduct, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

51.     The acts, omissions, and failures of Ackerman described in this Complaint occurred within the scope of his agency, employment, or office at Q3.  Accordingly, Q3 is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2019), as a principal for its agent's acts, omissions, or failures in violation 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

52.     At all times relevant to this Complaint, Ackerman controlled Q3, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Q3's conduct constituting the violations by Q3 described in this Count.  Accordingly, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), Ackerman is liable for Q3's violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

## VII.   PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to its own equitable powers:

a)      Find that Defendants violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2019);

b)      Enter an order of permanent injunction enjoining Defendants and any affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

c)      Enter an order of permanent injunction restraining and enjoining Defendants and any affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

i.      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

ii.      Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)), for their own personal account(s) or for any account in which Defendants have a direct or indirect interest;

iii.      Having any commodity interests traded on Defendants' behalf;

iv.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

v.      Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

vi.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and/or

vii.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person, registered, exempted from registration, or required to be registered with the Commission (except as provided for in 17 C.F.R. § 4.14(a)(9));

d)      Enter an order directing each Defendant to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of

the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil

Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584,

title VII, Section 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2019), for each violation of the

Act and Regulations, as described herein;

   e)  Enter an order directing Defendants, as well as any third-party transferee and/or

successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits

received including, but not limited to, trading profits, revenues, salaries, commissions, fees, or

loans derived directly or indirectly from acts or practices which constitute violations of the Act

and Regulations, as described herein, including pre- and post-judgment interest;

   f)  Enter an order requiring Defendants, as well as any successors thereof, to make

full restitution to every person who has sustained losses proximately caused by the violations

described herein, including pre- and post-judgment interest;

   g)  Enter an order directing Defendants, as well as any successors thereof, to rescind,

pursuant to such procedure as the Court may order, all contracts and agreements, whether

express or implied, entered into between, with, or among Defendants and any customer or

investor whose funds were received by Defendants as a result of the acts and practices which

constituted violations of the Act and the Regulations, as described herein;

   h)  Enter an order directing that Defendants, and any successors thereof, make an

accounting to the Court of all of their assets and liabilities, together with all funds they received

from and paid to investors and other persons in connection with commodity transactions and all

disbursements for any purpose whatsoever of funds received from commodity transactions,

including salaries, commissions, interest, fees, loans, and other disbursement of money or

property of any kind from at least August 2017 to the date of such accounting;

i)      An order requiring Defendants and any successors thereof to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

j)      An order providing such other and further relief as the Court may deem necessary and appropriate under the circumstances.

*       *       *

Dated:  February 11, 2020                    Respectfully submitted,

**COMMODITY FUTURES TRADING COMMISSION**

By:           *S/Jonah E. McCarthy*

Jonah E. McCarthy (S.D.N.Y. Bar No. JM1977)
Senior Trial Attorney
jmccartthy@cftc.gov

Jason Gizzarelli (*pro hac vice* application to be submitted)
Senior Trial Attorney
jgizzarelli@cftc.gov

Luke Marsh (*pro hac vice* application to be submitted)
Chief Trial Attorney
lmarsh@cftc.gov

Paul G. Hayeck (*pro hac vice* application to be submitted)
Deputy Director
phayeck@cftc.gov

Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, D.C. 20581
Phone: (202) 418-5000
Fax: (202) 418-5428

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING COMMISSION

EXHIBIT 2

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| Commodity Futures Trading Commission <br><br> *Plaintiff(s)* <br> v. <br> Michael Ackerman, Q3 Holdings, LLC, Q3I, LP <br><br> *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) <br><br> Civil Action No.   1:20-cv-01183-UA |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Michael Ackerman
1147 Kingsway Street
Alliance, Ohio 44601

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Jason Gizzarelli, Luke Marsh, Jonah McCarthy and Paul Hayeck
Commodity Futures Trading Commission -  Enforcement
1155 21st Street, NW
Washington, DC 20581

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   _____02/13/2020_____                    _____/S/ P. NEPTUNE_____
*Signature of Clerk or Deputy Clerk*

Civil Action No.  1:20-cv-01183-UA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| Commodity Futures Trading Commission | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| Michael Ackerman, Q3 Holdings, LLC, Q3I, LP | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.   1:20-cv-01183-UA

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Q3 Holdings, LLC
1994 Carolina Circle NE
St. Petersburg, Florida 33703

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Jason Gizzarelli, Luke Marsh, Jonah McCarthy and Paul Hayeck
Commodity Futures Trading Commission - Enforcement
1155 21st Street, NW
Washington, DC 20581

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   _____02/13/2020_____          _____/S/ P. NEPTUNE_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:20-cv-01183-UA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.


Date: _____                         _____
                                                                              *Server's signature*

                                                        _____
                                                                              *Printed name and title*


                                                        _____
                                                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| Commodity Futures Trading Commission | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| Michael Ackerman, Q3 Holdings, LLC, Q3I, LP | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No. 1:20-cv-01183-UA

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Q3 I, LP
1994 Carolina Circle NE
St. Petersburg, Florida 33703

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Jason Gizzarelli, Luke Marsh, Jonah McCarthy and Paul Hayeck
Commodity Futures Trading Commission - Enforcement
1155 21st Street, NW
Washington, DC 20581

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____02/13/2020_____          _____/S/ P. NEPTUNE_____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   1:20-cv-01183-UA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

EXHIBIT 3

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Commodity Futures Trading Commission

Plaintiff

*vs.*                              Case No.: 1:20-cv-01183

Michael Ackerman, et al.

Defendant(s)

## AFFIDAVIT OF SERVICE

I, Ben Purser, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this matter.

That on 02/25/2020 at 5:45 PM, I served Michael Ackerman at University Hospital, 11100 Euclid Avenue, Cleveland, Ohio 44106 with the Summons and Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations by serving Michael Ackerman, personally.

Michael Ackerman is described herein as:

Gender: Male    Race/Skin: White    Age: 60    Weight: 180    Height: 6'1"    Hair: Gray/Balding    Glasses: No

I declare under penalty of perjury that this information is true and correct.

Executed On    02/27/2020

Benjamin Purser

Client Ref Number:N/A
Job #: 1575006

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Commodity Futures Trading Commission**

**Plaintiff**

*vs.*     Case No.: 1:20-cv-01183

**Michael Ackerman, et al.**

**Defendant(s)**

## AFFIDAVIT OF SERVICE

I, Ouida Carpenter, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 02/28/2020 at 11:06 AM, I served Q3 Holdings, LLC c/o Harvard Business Services, Inc., Registered Agent at 16192 Coastal Highway, Lewes, Delaware 19958 with the Summons and Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations by serving Allison Rathmanner, Mail Room Clerk, authorized to accept service.

Allison Rathmanner is described herein as:

Gender: Female   Race/Skin: White   Age: 32   Weight: 130   Height: 5'7"   Hair: Brown   Glasses: No

I declare under penalty of perjury that this information is true and correct.

3-5-2020
_____
Executed On

Ouida Carpenter
Ouida Carpenter

Client Ref Number:N/A
Job #: 1575457

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Commodity Futures Trading Commission**

**Plaintiff**

*vs.*                    Case No.: 1:20-cv-01183

**Michael Ackerman, et al.**

**Defendant(s)**

## AFFIDAVIT OF SERVICE

I, Ouida Carpenter, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Summons and Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 02/28/2020 at 11:06 AM, I served Q3 I, LP c/o Harvard Business Services, Inc., Registered Agent at 16192 Coastal Highway, Lewes, Delaware 19958 with the Summons and Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations by serving Allison Rathmanner, Mail Room Clerk, authorized to accept service.

Allison Rathmanner is described herein as:

Gender: Female   Race/Skin: White   Age: 32   Weight: 130   Height: 5'7"   Hair: Brown   Glasses: No

I declare under penalty of perjury that this information is true and correct.

3-5-2020
_____
Executed On

Ouida Carpenter
_____
Ouida Carpenter

Client Ref Number:N/A
Job #: 1575459

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

COMMODITY FUTURES TRADING
COMMISSION,

          Plaintiff,

    -against-

MICHAEL ACKERMAN, Q3 HOLDINGS,
LLC, and Q3 I, LP,

        Defendants.

---

ECF Case No.: 1:20-cv-01183-NRB

**CLERK'S CERTIFICATE OF**
**DEFAULT AGAINST DEFENDANT**
**MICHAEL ACKERMAN**

     I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action was commenced on February 11, 2020 with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant Michael Ackerman on February 25, 2020 by personally serving, and proof of service was therefore filed on March 6, 2020, (ECF No. 21). I further certify that the docket entries indicate that the defendant has not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendant is hereby noted.

Dated: __July 22, 2020__
New York, New York

                         RUBY J. KRAJICK
                         Clerk of Court

                         K. Mango
          BY:_____

                         Deputy Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

COMMODITY FUTURES TRADING
COMMISSION,

                   Plaintiff,

        -against-

MICHAEL ACKERMAN, Q3 HOLDINGS,
LLC, and Q3 I, LP,

                 Defendants.

ECF Case No.: 1:20-cv-01183-NRB

**CLERK'S CERTIFICATE OF**
**DEFAULT AGAINST DEFENDANT**
**Q3 I, LP**

---

      I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern

District of New York, do hereby certify that this action was commenced on February 11, 2020

with the filing of a summons and complaint, a copy of the summons and complaint was served

on Allison Rathmanner of Harvard Business Services, Inc., registered agent for defendant Q3 I,

LP on February 28, 2020 by personally serving, and proof of service was therefore filed on

March 6, 2020, (ECF No. 23). I further certify that the docket entries indicate that the

defendant has not filed an answer or otherwise moved with respect to the complaint herein. The

default of the defendant is hereby noted.

Dated: _____July 22, 2020_____
New York, New York

                          RUBY J. KRAJICK
                          Clerk of Court

                          *K. Mango*
                BY:_____

                          Deputy Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

        -against-

MICHAEL ACKERMAN, Q3 HOLDINGS,
LLC, and Q3 I, LP,

            Defendants.

ECF Case No.: 1:20-cv-01183-NRB

**CLERK'S CERTIFICATE OF**
**DEFAULT AGAINST DEFENDANT**
**Q3 HOLDINGS, LLC**

      I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action was commenced on February 11, 2020 with the filing of a summons and complaint, a copy of the summons and complaint was served on Allison Rathmanner of Harvard Business Services, Inc., registered agent for defendant Q3 Holdings, LLC on February 28, 2020 by personally serving, and proof of service was therefore filed on March 6, 2020, (ECF No. 22). I further certify that the docket entries indicate that the defendant has not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendant is hereby noted.

Dated:   July 22, 2020
New York, New York

                              RUBY J. KRAJICK
                              Clerk of Court

                     BY: K. Mango

                              Deputy Clerk