**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>      Plaintiff,<br><br>    v.<br><br>MICHAEL ACKERMAN, Q3 HOLDINGS, LLC, and Q3 I, LP,<br><br>      Defendants. | Case No. 1:20-cv-01183-NRB |

**DECLARATION OF DMITRIY VILENSKIY**
**PURSUANT TO 28 U.S.C. § 1746**

I, Dmitriy Vilenskiy, hereby make the following declaration:

### I. BACKGROUND

1. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2. I am employed as a Senior Futures Trading Investigator in the Division of Enforcement ("Division") of the Commodity Futures Trading Commission ("Commission"). I have held this position since September 2009.

3. From September 2016 to September 2019, I worked for the U.S. Department of Justice, Criminal Division, on special assignment from the Commission as a Detailee Investigator.

4. Prior to joining the Commission, I was a Regulatory Analyst at the Financial Industry Regulatory Authority. I earned a Bachelor of Science degree in Finance and International Business from the University of Maryland, College Park, Robert H. Smith School

of Business, and a certification in forensic accounting from Georgetown University. I am also a Certified Fraud Examiner.

5. In June 2020, I earned two certifications related to analysis and tracing of virtual-currency transactions: the Chainalysis Reactor Certification and CipherTrace Certified Examiner.

6. My responsibilities as a Senior Futures Trading Investigator at the Commission include the investigation of registered and unregistered commodity trading firms and individuals located throughout the United States and abroad, in order to ensure compliance with and enforcement of the Commodity Exchange Act and the rules and regulations promulgated thereunder.

7. Throughout my career with the Commission, I have analyzed and reviewed bank records, commodity futures and foreign currency trading records, virtual currency blockchain records, and other financial documents. Over the course of my career, I have been involved in more than 100 investigations in which I took primary investigatory responsibility.

8. I am one of the Futures Trading Investigators assigned to the Commission's investigation and litigation of this matter.

9. I understand that the Commission has filed a *Motion for Entry of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendants Michael Ackerman, Q3 Holdings, LLC and Q3 I, LP* (the "Motion"). I submit this Declaration pursuant to 28 U.S.C. § 1746 in support of the Commission's Motion and, in particular, in support of the restitution and civil monetary penalty amounts that the Commission seeks.

## II.     DIGITAL ASSETS

10. For purposes of this Declaration, I use the terms "digital asset" and "virtual currency" to refer to a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value. In contrast to real or traditional currency (i.e., the coin and paper money of a country), virtual currency does not have legal tender status in most jurisdictions.

11. The most commonly described type of virtual currency is called Bitcoin (BTC), but many other virtual currencies are actively traded on electronic platforms in the United States and worldwide.

12. Virtual currency trading includes the trading of virtual currency futures contracts, swaps, and other derivatives. Currently, for example, Bitcoin underlies futures contracts offered at the Cboe Futures Exchange and the Chicago Mercantile Exchange, both of which are registered with the Commission as "designated contract markets." Since at least 2015, exchanges outside of the United States have offered futures contracts on Bitcoin and other virtual currencies, including Ether (ETH), Ethereum Classic (ETC), and Litecoin (LTC).

## III.     SUMMARY OF FINDINGS

13. As part of my investigatory responsibilities in this matter, I analyzed the amount of money that customers deposited with Defendant Michael Ackerman ("Ackerman"), Q3 Holdings, LLC and Q3 I, LP (collectively the "Defendants"), the movement of money from the Defendants to several virtual currency exchanges, and money that Defendants paid back to customers.

14. My analysis of documents obtained by the Commission during its investigation as

well as other information provided by customers of the Defendants revealed that, from at least August 2017 through December 2019 (the "Relevant Period"), Defendants received approximately $33 million from customers for the purpose of investing in virtual currencies.

15. Defendants transferred less than $10 million of the $33 million in customer funds to virtual currency exchanges.

## IV.    DOCUMENTS REVIEWED

16. During the course of investigating this matter, I participated in telephonic and in-person proffers of individuals who invested funds with the Defendants. I also participated in telephonic and in-person proffers of Ackerman's business partners and co-founders of Q3 Holdings, LLC and Q3 I, LP (collectively "Q3").  I also reviewed and analyzed the following documents and information:

   a. Materials provided by certain individuals who invested with Defendants;

   b. Bank records from Q3's bank accounts held at Signature Bank, N.A. ("Signature Bank");

   c. Certain bank records from a Q3 co-founder's account held at Wells Fargo Bank, N.A. ("Wells Fargo Bank");

   d. Virtual currency exchange records and related to accounts held by the Defendants; and

   e. Open-source and commercially obtained blockchain records concerning transfers of virtual currencies between blockchain wallet addresses used by the Defendants.

## V. FINDINGS

17. As stated above, along with other Division staff, I participated in telephonic interviews with certain customers of the Defendants. During the course of those interviews and in other communications, the customers represented that they were solicited to invest with the Defendants and were told that the Defendants profitably traded virtual currencies earning monthly returns of approximately 15% for their customers.

18. I reviewed records from certain bank and virtual exchanges where the Defendants conducted their business. My analysis revealed that the majority of customers deposited their investment funds with the Defendants at two banks, Signature Bank and Wells Fargo Bank. Additionally, based on information obtained from customer interviews, some customers transferred virtual currencies to the Defendants rather than depositing U.S. dollars.

19. Based on my analysis of banking records from Signature Bank and Wells Fargo Bank, from September 18, 2017 through December 10, 2019, Defendants received at least $32,451,492.23 from customers, residing in at least 27 states. During the same period, Defendants paid back at least $5,358,584.53 to customers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of January, 2021.

_____
Dmitriy Vilenskiy
Senior Futures Trading Investigator