**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-01183-NRB |
| MICHAEL ACKERMAN and Q3 HOLDINGS, LLC, | |
| Defendants. | |

**DEFENDANT Q3 HOLDINGS LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S MOTION FOR DEFAULT JUDGMENT**

Defendant Q3 Holdings, LLC ("Q3H"), by and through undersigned counsel, files this response in opposition to the Motion for Default Judgment (the "Motion") filed by Plaintiff Commodity Futures Trading Commission ("CFTC"). *See* DE 53. Having not sought the entry of a default judgment against Q3H for over two years since filing the Complaint, the CFTC, out of the blue, filed its Motion without notifying counsel for Q3H's Liquidating Person as it had agreed to do. Q3H files this response after months of repeated attempts on its part, immediately after retaining counsel and learning of the pending Motion, to negotiate in good faith with the CFTC and reach a favorable resolution for both parties in lieu of protracted litigation. Nevertheless, the CFTC has rejected Q3H's attempts at a negotiated resolution that would serve the interests of the victims of the fraud at issue. Q3H is now forced to defend this action to ensure that those who have been wronged are made whole, at the risk of the actual wrongdoers' assertion of an *in pari delicto* defense wrongfully implicating Q3H and blocking the victims' most efficient path to recovery. Accordingly, Q3H hereby opposes the Motion and respectfully requests that the Court vacate the Clerk's

Certificate of Default. *See* DE 37.

This case arises from a fraudulent scheme perpetrated by Michael Ackerman that resulted in tens of millions of dollars in damages to over 100 investors in Q3 I, L.P. ("Q3I"), a limited partnership formed for the purpose of investing and trading in various cryptocurrencies. Ackerman acted alone, and lied to not only Q3I and its limited partners, but also to its general partner, Q3H, and the remaining members of Q3H's board of managers, James Seijas and Quan Tran.

Ackerman's fraud has led to litigation beyond this action: Several lawsuits have been brought against banks, professionals, and other parties whose negligence or other wrongful conduct allowed Ackerman's fraud to continue undetected. Many of those parties asserted as an affirmative defense that Q3I and Q3H were *in pari delicto* with Ackerman, notwithstanding that Ackerman acted alone and was not authorized to act on behalf of Q3H. Those other defendants in separate actions are likely to cite to the entry of a default judgment in this action to support their *in pari delicto* defenses. This will substantially prejudice Ackerman's victims because it will create uncertainty as to who they may seek recovery from and for how much, and will increase the time and money the victims will be forced to spend to overcome the baseless *in pari delicto* defense propounded by multiple defendants in several separate actions.

Even if this substantial risk of material prejudice to Ackerman's victims did not exist, Q3H has established that good cause exists to deny the Motion and vacate the Clerk's Certificate of Default. Q3H's Liquidating Person reasonably believed, based on good faith conversations between his counsel and the CFTC, that the CFTC would provide notice prior to pursuing continued litigation against it after the dismissal of Q3I, which the CFTC did not do. Upon learning of the Motion, Q3H's Liquidating Person retained undersigned counsel, who immediately began attempting to negotiate a reasonable resolution. Q3H's default was not willful, and it has demonstrated its intention to fully litigate this action, which will not prejudice the CFTC given that virtually nothing has taken place in

this litigation since its inception.

## STATEMENT OF FACTS

### A.  Q3H and Doctor Vyas

Q3H is the general partner of cryptocurrency investment fund Q3I. Ackerman defrauded both Q3H and Q3I, and pleaded guilty to that fraud in another action before this Court. In that plea, Ackerman admitted that he was the sole perpetrator of the fraud, and that the other board members of Q3H and the more than 100 limited partners of Q3I were not aware of and were in fact victimized by that fraud. Ackerman's fraud cost his victims between $35 and $38 million, with efforts to recover as much of this loss as possible for the victims ongoing. *See* February 22, 2023 Declaration of Paul Thanasides ("Thanasides Declaration"), ¶ 3.

Q3H was operated by a three-member board of managers consisting of Tran, Seijas, and defendant Ackerman. After discovering Ackerman's fraud, Tran and Seijas, on advice of their personal counsel, ceased acting on behalf of Q3H, allowing the Clerk of this Court to enter a Certificate of Default against Q3H on or about July 22, 2020. *See* DE 37.

In 2021, the victims of Ackerman's fraud appointed Dr. Sanket Vyas as the Liquidating Agent of Q3I, and in August 2022, he was appointed as the Liquidating Person of Q3H. *See* Thanasides Declaration, Exhibits ("Exs.") 1, 2. Dr. Vyas's charge is to liquidate Q3I's claims and assets with the assistance of Q3H for the benefit of Q3I's and Q3H's joint creditors. *See id*. It was not until late November 2022, months after his appointment as Liquidating Person for Q3H, that counsel for Dr. Vyas became aware and immediately informed him that the CFTC intended to move forward with seeking a default judgment against Q3H.

### B.  The Parties Agree to Dismiss Q3I From this Action and to Provide Advance Notice of Any Future Motion for Default Judgment Against Q3H

The CFTC previously sued Q3I in this case under the same theory that it is presently suing Q3H. In April 2022, Paul Thanasides, Esq., who currently represents Dr. Vyas as Liquidating Agent

for and on behalf of Q3I and as Liquidating Person for and on behalf of Q3H, as well as a recovery vehicle that owns the claims of 71 of Ackerman's victims, was successful in convincing the CFTC to dismiss its claims against Q3I because the factual assertions about Ackerman's control of Q3I were incorrect. Moreover, if a final default judgment against Q3I were entered and the incorrect facts in that judgment were determined to be estoppel or even admissible against the Liquidating Agent in the claims he has brought to make the victims whole, that would serve as a serious injustice to those victims. Accordingly, the CFTC and Mr. Thanasides reached an accord to drop Q3I from this case. *See* DE 49-51.

Based on his discussions with counsel for the CFTC, Mr. Thanasides understood that the CFTC would notify his firm, as national counsel for Dr. Vyas as Liquidating Agent for Q3I and the recovery vehicle owning certain of Ackerman's victims' claims, if it intended to seek a judgment of default against Q3H as well. While Mr. Thanasides did not represent the Liquidating Person for Q3H at the time, because Dr. Vyas had not yet been appointed to that role, he later came to represent Dr. Vyas in that capacity. If the CFTC had notified Mr. Thanasides in September 2022, before it filed its Motion, Mr. Thanasides would have notified Dr. Vyas in his capacity as the Liquidating Person for Q3H. *See* Thanasides Declaration, ¶ 6. Dr. Vyas would have been forced either to mount a defense or to convince the CFTC that it is in the best interests of the victims to dismiss Q3H from this action. *See id.*

## C. The CFTC Pursues Default Judgment Against Q3H, and Rejects Q3H's Attempts to Reach a Negotiated Resolution

Nevertheless, the CFTC filed its Motion without first informing Mr. Thanasides that it intended to do so. *See* Thanasides Declaration, ¶¶ 8-9. As with its claim against Q3I, the central claim of the CFTC's action against Q3H is that Ackerman controlled Q3H. That is incorrect—as discussed above, Q3H was operated by a three-member board, and only by that board. Ackerman did not have individual authority to bind Q3H. As with the incorrect factual assertions about Q3I, the incorrect

4

factual assertions about Q3H in the proposed final default judgment sought by the CFTC could be used to interfere with the Liquidating Agent's claims, which have been brought to make Ackerman's victims whole. Many of the defendants to the claims brought by the Liquidating Agent of Q3I in separate actions have asserted *in pari delicto* defenses, which, though incorrect, could be assisted by the factual findings in the CFTC's proposed final judgment. *See id.*, ¶ 4.

Immediately after Mr. Thanasides became aware of the CFTC's Motion and informed Dr. Vyas, on December 1, 2022, Mr. Thanasides reached out to counsel for the CFTC to discuss the Motion and to determine if the CFTC would agree to voluntarily dismiss Q3H from the case, as it had previously done with respect to Q3I. The CFTC did not respond. On December 2, Mr. Thanasides sent a follow-up email to the CFTC's counsel. Once again, there was no response. Instead of responding to Dr. Vyas's request for a conference to resolve the issues without Court intervention, the CFTC refiled the Proposed Default Judgment. *See* DE 58; Thanasides Declaration, ¶ 10.

In turn, Dr. Vyas, as Liquidating Person of Q3H, immediately retained undersigned counsel to appear for Q3H in this matter. Despite Q3H's attempts to reach a mutually agreeable resolution without Court intervention, the parties have been unable to resolve this action. Accordingly, Q3H opposes the Motion and respectfully requests that the Court vacate the Clerk of Court's Certificate of Default.

## ARGUMENT

### A. <u>Good Cause Exists to Deny the Motion and Relieve Q3H from the Clerk's Default.</u>

A court may vacate a Certificate of Default where the default resulted from "mistake, inadvertence, surprise, or excusable neglect." *Vedder Price P.C. v US Capital Partners, LLC*, 2017 WL 4180021, at *2 (S.D.N.Y. Sept. 20, 2017). Where, as here, "a final default judgment has not yet been entered, a Certificate of Default can be set aside for good cause." *Id.* "When determining whether good cause has been shown by a Defendant, a court will balance three factors: (1) whether

the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, 2019 WL 1099944, at *1 (S.D.N.Y. Mar. 8, 2019). Courts also consider "other relevant equitable factors including whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Id*. These criteria are construed generously, in light of the Second Circuit's "strong preference for resolving disputes on the merits." *Id*. Because of this preference, "doubt should be resolved in favor of the defaulting party." *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013). "[W]hile courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Kasa, LLC v. Humphrey*, 2018 WL 1867117, at *10 (E.D.N.Y. Jan. 24, 2018), *report and recommendation adopted*, 2018 WL 1083958 (E.D.N.Y. Feb. 26, 2018).

As shown below, good cause exists to set aside the Clerk's default against Q3H because Q3H's default was not willful, setting aside the Clerk's default will not prejudice the CFTC, and Q3H has meritorious defenses to the Complaint.

### 1.    Q3H's Default was Not Willful.

"In the context of a default judgment, "'willfulness' . . . refers to conduct that is more than merely negligent or careless." *Vedder*, 2017 WL 4180021, at *3. "In contrast to situations in which the conduct of counsel or the litigant was egregious and was not satisfactorily explained, a defendant's inadvertent mistake may be excusable." *Id.* (defendant's failure to file an answer based on information relayed by counsel supported vacatur of a certificate of default).

Q3H did not file an answer to the Complaint based on a conversation between Mr. Thanasides and the CFTC, during which the CFTC assured Mr. Thanasides that it would not move for default judgment against Q3H without first giving notice. *See* Statement of Facts, Section B. Q3H acted

reasonably in taking the CFTC at its word.

Moreover, the Liquidating Person for Q3H who now seeks to defend this case, Dr. Vyas, was not appointed until August 2022. Accordingly, the Liquidating Person was unaware of the CFTC's Motion when it was first filed. When Mr. Thanasides discovered and informed Dr. Vyas of the Motion, Dr. Vyas immediately retained undersigned counsel to defend against the Motion while, at the same time, restarting discussions with the CFTC about a negotiated resolution. Such a resolution would have been in the best interests of Ackerman's victims' because rather than have Q3H litigate *against* the CFTC, the parties could have worked together to ensure full recovery for those victims.

Moreover, although Mr. Thanasides did not officially represent Q3H at the time of his discussions with the CFTC in or around April 2022 concerning Q3I's dismissal, he understood that if the CFTC intended to move for a default judgment against Q3H, it would notify him. Due to an apparent miscommunication, the CFTC did not understand that it had made any such representation to Mr. Thanasides, and accordingly it filed the Motion without notice. Because Mr. Thanasides received no notice from the CFTC, and because the CFTC previously dismissed Q3I from this action, Dr. Vyas had no reason to believe he needed to take any action regarding Q3H in this matter upon his appointment as Liquidating Person in August 2022.

Accordingly, Q3H's inadvertent, belated discovery of the CFTC's Motion does not rise to the level of egregiousness that would render it willful, especially in light of Mr. Thanasides's understanding that the CFTC would take no further action against Q3H without notification of its intent to do so.

**2.      Setting Aside the Clerk's Certificate of Default Would not Prejudice the CFTC.**

"In order for a party to demonstrate prejudice in the delay caused by lifting the default and permitting the litigation to continue, the party must show the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion—circumstances that make it more

difficult for plaintiff to prosecute its case." *Vedder*, 2017 WL 4180021, at *4. Here, requiring the resolution of this action on its merits will not prejudice the CFTC. No discovery has been conducted and nothing about the circumstances surrounding this action has changed since the Complaint was filed. The mere fact that prosecution of this case will be delayed does not establish prejudice. *See Enron Oil Corp. v Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) (delay in case due to setting aside an entry of default does not amount to prejudice, as "delay standing alone does not establish prejudice"). This is especially true because the CFTC filed its Complaint on February 11, 2020, but waited *over two and a half years* to seek entry of a default judgment, filing the Motion on September 28, 2022, and in light of the CFTC's refusal to engage in meaningful settlement discussions that would resolve this action and allow both parties to focus their efforts on ensuring that Ackerman's victims are made whole.

Nor can the CFTC claim it or the victims of Ackerman's fraud will be prejudiced because, as the CFTC is well aware, Dr. Vyas is currently prosecuting several actions in an effort to make the victims whole. Instead of working with Q3H to help Ackerman's victims, as is ostensibly the CFTC's ultimate goal, the CFTC continues to wrongfully assert that Q3H is responsible for Ackerman's fraud, harming the victims by providing defendants in other actions support for their *in pari delicto* defenses that needlessly muddy the waters and remove the weight of full liability from Ackerman and his enablers, where it belongs. Simply put, the CFTC loses nothing by vacatur of the Clerk's default in this matter, and entry of a default judgment against Q3H would *severely* prejudice the victims.

### 3. Q3H has Meritorious Defenses to the CFTC's Allegations in the Complaint.

"In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a certificate of default, the defendant must present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Vedder*, 2017 WL 4180021, at *3. "This threshold is very

low." *Id.* "To satisfy the criterion of a meritorious defense, the defense need not be ultimately persuasive at this stage, but rather it must be good at law so as to give the factfinder some determination to make." *Id.*

Although the CFTC attempts to attribute Ackerman's fraud to Q3H, the reality is that Q3H never designated Ackerman as its agent such that he could act for and bind the company unilaterally. In fact, Delaware law (under which Q3H was formed and governed), as well as Q3H's operating agreement, preclude Ackerman from binding Q3H. In other words, Ackerman's conduct cannot be imputed to Q3H as a matter of established law.

Delaware's Limited Liability Company Act provides:

§ 18-402. Management of limited liability company.

**Unless otherwise provided in a limited liability company agreement**, the management of a limited liability company shall be vested in its members in proportion to the then current percentage or other interest of members in the profits of the limited liability company owned by all of the members, the decision of members owning more than 50 percent of the said percentage or other interest in the profits controlling; provided however, that if a limited liability company agreement provides for the management, in whole or in part, of a limited liability company by a manager, the management of the limited liability company, to the extent so provided, shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement. The manager shall also hold the offices and have the responsibilities accorded to the manager by or in the manner provided in a limited liability company agreement. Subject to § 18-602 of this title, a manager shall cease to be a manager as provided in a limited liability company agreement. A limited liability company may have more than 1 manager. **Unless otherwise provided in a limited liability company agreement**, each member and manager has the authority to bind the limited liability company.

6 Del. C. § 18-402 (emphases added).

Q3H's operating agreement expressly states that management is not vested in the members and that no single member or manager has the authority to bind the company:

Section 7.1 Management of the Company

Except as otherwise specifically provided in this Agreement, the business and affairs of the Company shall be managed by or under the direction of a board of Managers (the "Board of Managers") and **no Member shall have any right to participate in**

**or exercise control or management power over the business and affairs of the Company or otherwise to bind. Act or purport to act on behalf of the Company in any manner solely by reason of being a Member**. Subject to the limitations set forth in this Agreement, the Board of Managers shall have all the rights and powers that may be possessed by a manager under the Act.

The rights and powers of the Managers shall only be exercised (unless otherwise expressly provided for herein) **upon the approval of a majority vote of the Board of Managers. No individual Manager, in his or her capacity as such, may act on behalf of the Board of Managers or the Company**.

Thanasides Declaration, Ex. 3, Q3H Operating Agreement, § 7.1 (emphases added). According to Delaware law and Q3H's operating agreement, Ackerman had no authority to act on behalf of or bind Q3H. As a result, Ackerman's conduct cannot be imputed to Q3H.

Because Q3H's board of managers was not complicit in Ackerman's scheme, it naturally follows that Q3H was not either. As noted above, Q3H was operated by a three-member board of managers, and its operating agreement required that all decisions be made by a majority of the board. Seijas and Tran—who comprised a controlling majority of the Q3H board of managers—and the fund administrator for Q3I, Dennis McEvoy, were unaware of, and were accordingly not complicit in, Ackerman's fraud. *See, e.g.*, Thanasides Declaration, Ex. 4, Affidavit of James Seijas, ¶¶ 13-15 ("Q3I was not complicit in Ackerman's scheme. Neither was I nor Tran, who are the majority members of the board of managers of Q3 Holdings . . . . Ackerman did not have any authority to individually act on behalf of or bind Q3I . . . . Ackerman did not have any authority to individually act on behalf of or to bind Q3 Holdings."); Thanasides Declaration, Ex. 5, Affidavit of Quan Tran, ¶¶ 6-7 (Tran stating the same); *see also, e.g.*, Thanasides Declaration, Ex. 6, Deposition of James Seijas, at 29:25-30:10 (Seijas testifying that all three managers made the decision to change the funds' trading strategy to use an algorithm instead of trading manually); *id.* at 95:14-22 (Seijas testifying that all three of the managers made decisions to move money out of the Bitfinex account); Thanasides Declaration, Ex. 4 ¶ 25 ("In late November / early December 2019, Ackerman indicated that he was suffering from an illness and would be going to the hospital. I directed him to stop trading at that

point."); Thanasides Declaration, Ex. 5 ¶ 10 ("I had no idea that the reported profits were not real until December 2019.  As soon as I realized what Ackerman did, I directed him to stop all trading and I called the authorities.").

In short, Ackerman defrauded Q3I and Q3H by lying about the trading returns to the remaining members of Q3H's board of managers. Q3H and Q3I were Ackerman's victims, not his accomplices. Indeed, the fact that the CFTC previously dismissed Q3I from this litigation demonstrates that Q3H has viable defenses because they are nearly identically situated. Q3H should not be stripped of its right to assert those defenses by way of default judgment when undersigned counsel is ready and willing to defend this action.

**B.  Equitable Factors Weigh in Favor of Vacating the Clerk's Default against Q3H**

"[O]ther relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Sea Hope Navigation*, 978 F. Supp. 2d at 337. Here, entry of default would be harsh and unfair. The Liquidating Person handling Q3H's affairs was not even appointed when the Certificate of Default was entered, and the purported miscommunication between Mr. Thanasides and the CFTC led to the reasonable belief that the CFTC would not proceed with its request for a default judgment against Q3H unless and until it gave appropriate notice.

Perhaps most importantly, the victims that Dr. Vyas is working to recover for, and who the CFTC ostensibly seeks to protect, face the likelihood of substantial prejudice and further damage if a default judgment is entered against Q3H based on the allegations in the Complaint. Dr. Vyas in his capacity as Liquidating Agent of Q3I is pursuing claims against various other individuals and entities for negligence and other wrongful conduct that allowed Ackerman's fraud to continue undetected. Many of those defendants have asserted as an affirmative defense that Q3H and Q3I were *in pari delicto* with Ackerman and that, as a result, the claims asserted against them are barred. A default

judgment against Q3H as to the operative Complaint would immediately be seized upon by those other defendants in service of their arguments that Ackerman's conduct is imputed to Q3H and then to Q3I. This would substantially prejudice Ackerman's victims, not only by drastically increasing the uncertainty that they will be able to overcome those defenses and recover from those defendants, but also substantially increasing the time and money that must be expended to overcome those defenses. In the interest of fairness, including resolving the improper *in pari delicto* allegation on its merits and protecting Ackerman's victims, the CFTC's Motion should be denied and the Clerk's default against Q3H should be vacated.

## CONCLUSION

For the reasons herein, Q3H respectfully requests that the Court deny the Motion and vacate the Clerk of the Court's entry of a Certificate of Default against Q3H.

Dated: February 22, 2023

Respectfully submitted,

 /s/ *L. Reid Skibell*
L. Reid Skibell, Esq.
Megan M. Reilly, Esq.
GLENN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
rskibell@glennagre.com
mreilly@glennagre.com

*Counsel for Defendant Q3 Holdings, LLC*